**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 99-1131NE
_____

| | |
|---|---|
| Michael Malone, | * |
| | * |
|     Appellant, | * |
| | * On Appeal from the United |
| v. | * States District Court |
| | * for the District of |
| | * Nebraska. |
| Eaton Corporation, | * |
| | * |
|     Appellee. | * |

_____

Submitted: June 14, 1999

Filed: August 11, 1999
_____

Before RICHARD S. ARNOLD and LOKEN, Circuit Judges, and BYRNE,[1] District Judge.
_____

RICHARD S. ARNOLD, Circuit Judge.

    Michael Malone brought this suit under Title VII, 42 U.S.C. § 2000e et seq., Neb. Rev. Stat. § 48-1101 and § 20-148, and Nebraska common law against his former employer, Eaton Corporation, alleging he was discriminated against because of his sex,

---

[1] The Hon. William Matthew Byrne, Jr., United States District Judge for the Central District of California, sitting by designation.

Appellate Case: 99-1131    Page: 1    Date Filed: 08/11/1999 Entry ID: 1166380

and was defamed after his termination. The District Court[2] granted Eaton summary judgment because Malone failed to produce sufficient evidence to rebut Eaton's valid business reason for the termination, and because Malone failed to show that Eaton acted with malice in describing the reason for the termination. We affirm.

I.

In reviewing a grant of summary judgment, we apply the same standard used by the District Court: whether there is a genuine issue of material fact, and whether the moving party is entitled to a judgment as a matter of law. We briefly outline the facts of the case, resolving all factual disputes in favor of the non-moving party, and giving him the benefit of all reasonable inferences.

Malone began working at Eaton in June 1993. He was promoted to the position of shift supervisor in October 1996. After his promotion, Malone was questioned by his supervisor, Product Line Manager Ron Fowler, concerning rumors at the plant that Malone was having an intimate relationship with Ann Ables, a worker who reported directly to Malone. He denied any such relationship. Malone was warned that Eaton did not permit intimate relationships between supervisors and direct reports and was advised not to do anything to provide grounds for such rumors. Malone also had a conversation with Human Resources Manager Tim Krohn concerning the same matter.

In March 1997, Suggestion Coordinator Luci Donaldson reported to Human Resources Manager Krohn that Malone told her he was having an affair with Lynette Gilming. Gilming worked under Malone's direct supervision. Donaldson also told Krohn that Forge Shop Supervisor Jim Williamson and Line Supervisor Doug Hild were present at the time Malone admitted to the affair. On March 20, 1997, Malone

---

[2]The Hon. Richard G. Kopf, United States District Judge for the District of Nebraska.

Appellate Case: 99-1131   Page: 2   Date Filed: 08/11/1999 Entry ID: 1166380

met with Krohn and Product Line Manager Fowler in Krohn's office. Malone was asked if he was having an intimate relationship with Gilming. He was told that Eaton was concerned about potential liability from a sexual-harassment claim if his relationship with Gilming were to sour. He was also told that if he admitted to the relationship, he would be offered a non-supervisory position with the company, and that no disciplinary action would be taken against Gilming. He was further warned that if he denied the relationship, and it was later discovered that he had lied, he would be terminated. Malone lied. In his deposition, Malone explained that he denied that he was having an intimate relationship with Gilming because he "didn't think it was any of their business."

Later that day, Krohn met with Williamson, and Fowler met with Hild, the two other supervisors who were present when Malone admitted the affair to Donaldson. Both confirmed that Malone had told them that he was having an intimate relationship with Gilming. The next day, Krohn and Fowler met again with Malone and told him the results of their investigation. Malone was terminated.

Following the termination, Fowler conducted a meeting with production supervisors and engineers to reinforce the plant policy of prohibiting intimate relationships between supervisors and direct reports. The accounts of the meeting are based on the various recollections of those present. Malone claims, and we assume for present purposes, that Fowler told those gathered that Malone had been "fired for a form of sexual harassment."

II.

Malone's suit alleged that his termination was the result of gender discrimination in violation of Title VII and the Nebraska Fair Employment Practices Act.[3] Malone, therefore, was required to satisfy the familiar analytical framework set out by the Supreme Court in McDonnell Douglas v. Green, 411 U.S. 792 (1973). The problem, however, was that he could not offer enough evidence to permit a reasonable jury to conclude that Eaton's stated reason for his discharge, namely that he was terminated for engaging in an improper relationship with a subordinate, and then lying about it, was a mere pretext for unlawful gender discrimination.

In an attempt to meet this burden, Malone claimed that a female supervisor also violated company policy by having intimate relationships with subordinates, but was not disciplined. According to Malone, when this female supervisor was questioned by management about rumors and anonymous notes and telephone calls that indicated she was having an affair with a subordinate, she simply denied the allegations, and the matter was not pursued any further. The fact that Eaton treated her more leniently, Malone contended, was evidence that he was discriminated against because of his gender.[4]

We disagree. There were significant and undisputed differences between this female supervisor's alleged misconduct and Malone's admitted violations of company

---

[3] The Nebraska statute is patterned after the federal statute, and Nebraska courts look to federal decisions when construing the Nebraska Act. Airport Inn v. Nebraska Equal Opportunity Comm., 217 Neb. 852, 353 N.W.2d 727 (1984).

[4] On appeal, Malone also argues that the fact that Gilming was not disciplined is evidence of discrimination. We disagree. Gilming was not a supervisor. The company may reasonably place most of the burden of enforcing its policy on supervisors who are to blame.

-4-

policy. Malone admitted his affair to three other supervisory employees. One of these employees reported the incident, in person, to management. After Malone denied the relationship, the other two employees confirmed that Malone had told them he was intimately involved with Gilming. In the case of the female supervisor, Eaton had only rumors and anonymous reports that she had violated company policy. Nevertheless, Eaton questioned her about the situation, and she denied any wrongdoing. This was similar to the treatment Malone received when Eaton heard rumors that he was involved with Ann Ables. In that case, Malone was approached by management on the basis of rumors, and when he denied the allegations, the matter was dropped. Furthermore, Eaton had strong evidence that Malone had lied to management investigating the Gilming report even after he was warned that dishonesty would be grounds for his dismissal. Eaton had no evidence that the female supervisor had been dishonest. Because of these differences, Malone could not establish, as a matter of law, that he was similarly situated to the female supervisor and could not use the difference between Eaton's responses to the reports as evidence of discrimination.

III.

Malone alleged a cause of action for defamation under the common law of Nebraska. The basis of this claim was the statement made by Ron Fowler, the Product Line Manager, at a meeting of supervisors and engineers which announced that Malone had been fired "for a form of sexual harassment." The purpose of this meeting was to reiterate Eaton's policy against supervisor-subordinate relationships, warn the other supervisors about the consequences of violating the policy, and underscore the risk of potential liability from a sexual-harassment claim. This communication was between parties sharing a common interest in the subject matter and is entitled to a qualified privilege under Nebraska law. Turner v. Welliver, 226 Neb. 275, 287, 411 N.W.2d 298, 307 (1987). Therefore, in order for Malone to recover he must prove that the communication was made with malice. Id. Malice is defined as "hate, spite, or ill will" toward the person about whom a statement has been published. Young v. First United

-5-

Appellate Case: 99-1131     Page: 5     Date Filed: 08/11/1999 Entry ID: 1166380

Bank of Bellevue, 246 Neb. 43, 48, 516 N.W.2d 256, 259 (1994). There is no evidence that Fowler acted with malice in announcing Malone's termination in the terms alleged. The fact that rumors of Malone's discharge may have made it around the plant and into the community does not subject Eaton to liability. The communication alleged in the complaint is protected by privilege and is not actionable.

IV.

We have fully considered Malone's other arguments and find them to be without merit. The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

Appellate Case: 99-1131    Page: 6    Date Filed: 08/11/1999 Entry ID: 1166380